IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUGAR BOWL RANCH, LLC, *et al.*, | No. 4:22-CV-00287 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| SWN PRODUCTION COMPANY, LLC and REPSOL OIL & GAS USA, LLC, | |
| Defendants. | |

**MEMORANDUM OPINION**

SEPTEMBER 26, 2022

Plaintiffs are a group of individuals and entities that own properties in Liberty Township, Tioga County, Pennsylvania. These properties are subject to oil and gas leases with Defendants, SWN Production Company, LLC (SWN), and Repsol Oil & Gas USA. Plaintiffs have sued for declarations that those leases are invalid and to quiet title the properties subject to them. They have also sued for conversion of any oil and gas that was removed from their properties following the termination of those leases.

Defendant SWN now moves to dismiss the complaint for two reasons: (1) Plaintiffs have failed to join certain necessary parties—specifically, cotenants that hold a fifty-percent interest in three of the four lots subject to the oil and gas leases and (2) that Plaintiffs have failed to state claims for quiet title and for conversion.

But because SWN has failed to show that resolution of this action will impact the cotenants and resolution of Plaintiffs' other allegations raise factual issues not fit for resolution at this stage of the litigation, SWN's motion is denied.

## I.   BACKGROUND

### A.   The Subject Properties

Plaintiffs chain of title to the subject lands begins with a 1991 deed between two married couples both named Loudenslager.[1]  These properties were then conveyed several times among Plaintiffs, who currently own them.[2]  The 1991 deed transferred four lots, three of which are subject to a reservation "contained in former deed with reference to one-half share of all the natural gas, coal, oil, petroleum and minerals of every kind and character."[3]  The three lots subject to the reservation were conveyed to Plaintiffs' predecessors in title in 1931 by deed.[4]  The property descriptions of the three parcels in the 1991 deed (described by metes and bounds) correspond to the descriptions of three of the lots in the 1931 deed, which explicitly reserves a fifty-percent interest in the mineral estate of the three lots.[5]

---

[1]   Compl. Doc. 8 ¶¶ 7-8.
[2]   *Id.* ¶¶ 9-11, 19-38.
[3]   Doc. 8-1 at 3.
[4]   *See* Doc. 12-1 at 1-2.  Although normally bound to consider only the complaint, the Court may rely upon "other relevant extra-pleading evidence" provided by Defendant SWN in deciding its Fed. R. Civ. P. Rule 12(b)(7) motion. *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994) (quoting *Martin v. Loc. 147, Int'l Bhd. of Painters & Allied Trades, AFL-CIO-CFL*, 775 F. Supp. 235, 236 (N.D. Ill. 1991)).
[5]   *Compare* Doc. 12-1 at 2-3 (1931 deed), *with* Doc. 8-1 at 2-3 (1991 deed).

## B.     The 2006 Leases

In 2006, Plaintiffs executed three oil and gas leases, (the "TDL lease," the "TBL lease," and the "PL Lease," collectively, the "2006 Leases") in favor of an oil company on the subject properties.[6] The 2006 Leases were eventually assigned to or procured by Defendants.[7] The 2006 Leases contain the same substantive terms, namely a primary term of five years, ending in 2011, that could be extended by an additional five years should operations continue.[8] Two of the Leases, the TDL and

---

[6]   Compl. Doc. 8 ¶¶ 12-17.
[7]   *See id.* ¶¶ 39-41.  Plaintiffs aver that the PL lease was never assigned or sold, *see id.* ¶ 40, but Defendant SWN purports to own the PL lease as well, evidenced by its attempt to have the cotenants of the subject lands ratify it in 2017, *see* Doc. 8-27 at 3.
[8]   *See* Compl. Doc. 8 ¶¶ 42-46.  The leases would be extended if any of the following conditions occurred:

   1. Drilling operations continue with due diligence, provided that the lessee has commenced drilling operations on any portion of the premises or any lands pooled or unitized therewith, within the primary term;

   2. An application for a drilling permit is pending with the appropriate authorities, and lessee, after grant of such permit, commences drilling operations within a reasonable time thereafter and continues same with due diligence, provided said permit application was filed prior to the expiration of the primary term;

   3. Oil and gas or either of them is produced or withdrawn from any portion of the premises or any lands pooled or unitized therewith;

   4. Gas storage operations are conducted in or on any portion of the premises; or

   5. A completed oil or gas well would be capable of producing oil or gas from any portion of the premises or any lands pooled or unitized therewith, but for acts of God, unavailability or interruption of markets or pipelines, delays due to pending governmental or regulatory authorization, or any other causes, which have caused lessee not to commence production from such well or to suspend production from such well.

*Id.* ¶ 45.

TBL leases, resulted in extensions, and thus would have ended in 2016 unless extended pursuant to the renewal provision.[9]

From 2015 to 2020, Defendant SWN filed declarations along with subsequent amendments establishing unitized gas units containing land subject to both the TDL and TBL Leases (the "Artley Hill East Unit" and the "Connolly A South Unit"), but its filings did not reference the PL Lease.[10]

In 2015, SWN received permits allowing drilling for a well for both gas units that contained land subject to Plaintiffs' leases.[11] SWN never began drilling for the Artley Hill East Unit and began, but never completed, drilling on the Connolly A South Unit, eventually plugging the well in 2018.[12] However, SWN did complete drilling for another well in the Connolly A South Unit that began to produce gas in 2018, as evidenced by records from the Pennsylvania Department of Environmental Protection.[13]

### C. The Alleged Ratification

In 2017, SWN filed a "Ratification of Oil and Gas Lease" (the "2017 Ratification"), in which various individuals (the "Ratifying Cotenants") purportedly ratified the 2006 Leases.[14] In the 2017 Ratification, SWN declared that it was the

---

[9] *See id.* ¶ 47.
[10] *Id.* ¶¶ 48-76.
[11] *See id.* ¶¶ 77, 79, 82.
[12] *Id.* ¶¶ 80-83.
[13] *Id.* ¶¶ 84-86.
[14] *Id.* ¶¶ 123-24; Doc. 8-27 at 2.

then-present "owner of all right title, and interest[s]" under the 2006 Leases. The Ratifying Cotenants, as counterparties, acted to

> join in, adopt, ratify and confirm said [the 2006 Leases] in all things insofar as it covers any present or future right, title, interest of the undersigned in [the three lots] with the same force and effect as if the undersigned has been named a party therein and had duly executed and delivered [the 2006 Leases].[15]

As SWN argues, the Ratifying Cotenants currently have a fifty-percent undivided interest in the mineral estate of three of the four lots conveyed in the 1991 deed.[16]

### D. Act 152 Notice

On September 16, 2021, Plaintiffs gave notice to SWN that the 2006 Leases terminated and requested surrender of the Leases pursuant to 58 Pa. C.S. § 904.[17] On October 12, 2021, SWN responded, claiming that the TDL and TBL Leases remained valid as operations were ongoing on a well in the Connolly A South Unit.[18] SWN continues to remove oil and gas from Plaintiffs' properties without Plaintiffs' consent or compensating Plaintiffs for the value of the oil and gas.[19]

### E. Procedural History

Plaintiffs' have sued for declarations that the PL, TDL, and TBL Leases are invalid (Counts I, III, and V, respectively), quiet title to the properties subject to the

---

[15] Compl. Doc. 8-27 at 2.
[16] Def's Br. Doc. 14 at 3-4.
[17] Compl. Doc. 8 ¶ 130; Doc. 8-28.
[18] Id. ¶¶ 131-34; Doc. 8-29.
[19] Id. ¶¶ 202-04.

PL, TDL, and TBL Leases (Counts II, IV, and VI), and for damages resulting from Defendants' conversion of oil and gas from Plaintiffs' properties (Count VII).

Defendant SWN has moved to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7).[20]

In support of its motion to dismiss under Rule 12(b)(7), SWN argues that the Ratifying Cotenants are necessary parties under Rule 19 by virtue of their status as tenants in common who own an undivided fifty-percent interest in the three lots with Plaintiffs.[21] SWN argues that the failure to join the Ratifying Cotenants as necessary parties requires dismissal of Plaintiffs' Complaint.[22]

Additionally, under Rule 12(b)(6), SWN moves to dismiss Count VII (conversion) because it is time-barred.[23] SWN also moves to dismiss Counts II, IV, and VI (quiet title as to PL, TDL, and TBL Leases, respectively) under Rule 12(b)(6) on the basis that Plaintiffs do not hold title that is superior to Defendant's title in the subject properties.[24]

---

[20] Def's Mot. to Dismiss Doc 11. Defendant Repsol has not joined in SWN's motion.
[21] Def's Br. at 10-11
[22] *Id.* at 11.
[23] *Id.* at 18-19.
[24] *Id.* at 17-18.

## II.   DISCUSSION

### A.   Motion to Dismiss Under Rule 12(b)(7)

#### 1.   Standard

Rule 12(b)(7) provides that a party may move to dismiss an action for failure to join an indispensable party under Rule 19, which governs mandatory joinder. The "Rule 19 inquiry is bifurcated."[25]  Before the Court considers whether a party is indispensable, it must first determine whether the party is "necessary."[26]  A party is "necessary" under Rule 19(a)(1) if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i)   as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii)  leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

A party is necessary if it meets the criteria in either subsections (A) or (B).[27] Rule 19(a)(1)(A) concerns whether a court may "grant complete relief to

---

[25]  *Guthrie Clinic, Ltd. v. Travelers Indem. Co. of Ill.*, 104 F. App'x 218, 221 (3d Cir. 2004).
[26]  *See id.*
[27]  *See Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007).

persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial."[28]

"Under Rule 19(a)(1)(B)(i), [a] court must decide whether determination of the rights of those persons named as parties to the action would impair or impede an absent party's ability to protect its interest in the subject matter of the litigation."[29]

Lastly, under Rule 19(a)(1)(B)(ii), a court must consider whether continuation of the action would expose named parties to the "substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest."[30] However, "the possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a matter of logic" is insufficient to require joinder under Rule 19.[31] Rather, "[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident."[32]

### B. Application

SWN's Rule 12(b)(7) argument is premised on its allegation that both Plaintiffs and the Ratifying Cotenants are parties to the 2006 Leases.[33] Thus, as SWN argues, the Court cannot void the Leases without joining all parties to it.

---

[28] *Id.* at 315 (emphasis in original).
[29] *Id.*
[30] *Id.* at 317.
[31] *Field v. Volkswagenwerk AG*, 626 F.2d 293, 301-02 (3d Cir. 1980).
[32] *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1040 (11th Cir. 2014).
[33] *Id.*

Pennsylvania follows the majority rule that tenants in common to mineral estates have the right to "explore for and produce oil and gas without consent of [their] cotenants."[34]  That right "is subject only to the duty to account to the tenants out of possession for their proportional share of the returns."[35]  The lessor-cotenant owes a duty to his non-lessor cotenants to provide them with their proportional share of the profits from any oil and gas production.[36]  Cotenants of the land already subject to a lease may ratify the lease, but only "[t]he co-tenants who originally executed the lease, rather than the lessee[,] are liable to the ratifying co-tenants for their share of the bonus."[37]

Accordingly, for the purposes of necessary joinder under Rule 19, it is immaterial whether the Ratifying Cotenants are parties to the 2006 Leases.  Whether they ratified those leases or did not, any remedy the Ratifying Cotenants seek must be sought from Plaintiffs.  That matter is entirely separate from this litigation between Plaintiffs and Defendants.

The cases relied upon by SWN are inapposite as they concern situations in which disposition of the action actually affected the common rights of each cotenant, whereas the disposition of this action only affects Plaintiffs' interest in the land.  Defendant cites *Brodsky v. Perth Amboy National Bank*, in which the United States

---

[34] *Markowicz v. SWEPI LP*, 940 F. Supp. 2d 222, 228 (M.D. Pa. 2013) (quoting EUGENE KUNTZ, A TREATISE ON THE LAW OF OIL AND GAS § 5.3 (Matthew Bender, Rev. Ed.)).
[35] *Lichtenfels v. Bridgeview Coal Co.*, 496 A.2d 782, 785 (Pa. Super. Ct. 1985).
[36] *See id.* at 785.
[37] KUNTZ, *supra*, at § 5.6.

Court of Appeals for the Third Circuit held that cotenants to a building were indispensable parties because the claim at issue "sought to nullify the lease on real estate held by four tenants in common."[38] Here, the only tenants in common that Defendants are liable to are Plaintiffs.

Likewise, SWN cites *London v. Kingsley*, in which the late Chief Judge Albert L. Watson wrote for this Court that because the "claims [at issue] concern the common property and are based on a common right growing out of the property, . . . it would be necessary for all the co-tenants to join in such action."[39] Here, under the 2006 Leases, Defendants are only liable to Plaintiffs for breach of the Leases or conversion. Plaintiffs, in turn, may be liable to the Ratifying Cotenants for their share of any profits from oil and gas production. But that does not create a common right between the Plaintiffs and the Ratifying Cotenants.

Accordingly, under Rule 19, the Court is empowered to grant complete relief among the existing parties. Nothing about the relief Plaintiffs seek will be "hollow" or meaningless without the Ratifying Cotenants as Plaintiffs do not seek anything from the Ratifying Cotenants. Consequently, joinder is unnecessary under Rule 19(a)(1)(A).

Likewise, invalidation of the 2006 Leases and awarding Plaintiffs damages will not impede or impair the Ratifying Cotenants' abilities to protect their interests.

---

[38] *Brodsky*, 259 F.2d at 707.
[39] 81 F. Supp. 83, 85 (M.D. Pa. 1948).

The Ratifying Cotenants only interest in this litigation is that Plaintiffs may owe them their share of the proceeds from oil and gas production, if any exist. Joinder is accordingly unnecessary under Rule 19(a)(1)(B)(i).

Lastly, Defendant SWN faces no risk in inconsistent obligations without the presence of the Ratifying Cotenants. Only Plaintiffs are liable to the Ratifying Cotenants for an accounting.[40] SWN is only liable to Plaintiffs.

Accordingly, SWN's motion, insofar as it relies on Rule 12(b)(7), is denied.

### C. Motion to Dismiss Under Rule 12(b)(6)

#### 1. Standard

Under Rule 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[41] and *Ashcroft v. Iqbal*,[42] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[43]

The Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not

---

[40] See KUNTZ, *supra*, at § 5.6.
[41] 550 U.S. 544 (2007).
[42] 556 U.S. 662 (2009).
[43] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

11

entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[44]

### 2.   Application to SWN's Statute of Limitations Defense

Under Pennsylvania law, the statute of limitations for conversion claims is two years.[45] Defendant SWN carries the burden of proving that Plaintiffs' claims fall outside of the statute of limitations.[46] As Defendants began to remove oil and gas from Plaintiffs' properties in July 2018, SWN asserts that the statute of limitations ran in July 2020, over a year before Plaintiffs filed their Complaint on March 22, 2022.[47]

In response, Plaintiffs argue that Defendants have been illegally extracting oil and gas from the subject lands continuously since July 2018.[48] Therefore, Plaintiffs argue that the statute of limitations has not run because Defendants' conversion is ongoing.[49] The parties differ over whether Pennsylvania law supports a continuing violation theory in the context of a conversion claim.

Pennsylvania courts have long recognized the concept of continuous trespass as it applies to real property.[50] That doctrine provides that "where it is impossible

---

[44] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[45] 42 Pa. C.S. § 5524(3).
[46] *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1092 (Pa. 2012).
[47] Def's Br. Doc. 12 at 18-19.
[48] *See* Doc. 8 ¶¶ 200-03.
[49] *Id.*
[50] *See Sustrik v. Jones & Laughlin Steel Corp.*, 197 A.2d 44, 46 (Pa. 1964)

to know exactly how many incidents of trespass will occur in the future, or the severity of the damage that may be caused, such that the full amount of damages cannot be calculated in a single action, the trespass is continuing."[51] In such a situation, "[t]he possessor may maintain a succession of actions based on the continuing trespass or treat the continuance of the thing on the land as an aggravation of the original trespass."[52]

Pennsylvania courts have applied the doctrine in several trespass cases where the tortfeasor continuously and intermittently caused water to enter the land of the plaintiff and failed to remove it.[53] Here, the reverse is true. Plaintiffs allege that instead of continuously causing water to enter the land, Defendants are continuously removing oil from it without consent. The torts of conversion and trespass are closely related.[54] Plaintiffs likely could bring a succession of conversion actions for each unit of oil illegally removed from their properties. Nor can the damages be reasonably calculated in one conversion action, as Defendants continue to remove oil and gas from Plaintiffs' properties.

In the similar matter of *Young v. Young*, the Supreme Court of Wyoming applied the doctrine of continuing violation to a conversion claim for oil and gas

---

[51] *Kowalski v. TOA PA V, L.P.*, 206 A.3d 1148, 1161 (Pa. Super. Ct. 2019).
[52] *Id.*
[53] *See id.* at 1162; *Miller v. Stroud Tp.*, 804 A.2d 749, 754 (Pa. Cmmw. Ct. 2002); *Graybill v. Providence Tp.*, 593 A.2d 1314, 1317 (Pa. Cmmw. Ct. 1991), *aff'd*, 618 A.2d 392 (Pa. 1993).
[54] *See* Restatement (Second) of Torts § 222A cmt. a (Am. L. Inst. 1965).

royalties due to the plaintiff under a divorce decree.[55] The court concluded that "[the defendant's] failure to remit to [the plaintiff] her royalty share as received was a recurring tort of a sort which involved separate and successive injuries from separate and successive acts[,]" and that "[the defendant's conduct] is an exemplification of periodic recurring wrongful acts—a series of tortious acts, each of which could be the basis for a separate claim, not continuing damage from an original tort."[56]

The *Young* court ultimately allowed the plaintiff to recover for the four-year period before she filed suit, consistent with Wyoming's four-year statute of limitations for conversion actions.[57] As in *Young*, the ongoing removal of oil from Plaintiffs' lands is a continuous series of tortious acts rather than additional damages from a singular act.

SWN cites cases in which Pennsylvania courts have held that the continuing violation doctrine did not apply to various causes of action.[58] The Court finds these cases distinguishable. In each of the cases, the alleged wrong can be broken into discrete acts or transactions instead of a continuing course of conduct.[59] Unlike

---

[55] 709 P.2d 1254, 1258-59 (Wyo. 1985).
[56] *Id.* at 1259; *see also Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 101 (R.I. 2006) (allowing a plaintiff to recover on otherwise time-barred conversion claim because "[t]he cause[] of action for conversion . . . encompassed an ongoing and continuous theft of electricity . . . . The accrual of such actions, therefore, was not fixed in time as of the date the [tortious diversion occurred]").
[57] *Young*, 709 P.2d at 1260.
[58] *See* Def's Reply Br. Doc. 19 at 14-18.
[59] *See Beltz v. Erie Indem. Co.*, 733 Fed. Appx. 595, 599 (3d Cir. 2018) (refusing to apply the continuing violation theory to annual fees wrongfully charged) *Casner v. Am. Fedn. of State, County and Mun. Emp's*, 658 A.2d 865, 871 (Pa. Cmmw. Ct. 1995) (refusing to apply the continuing violation theory to funds illegally withheld from each paycheck); *Saxberg v.*

14

*Young* or the cases SWN cites, Plaintiffs do not seek a series of discrete payments that have been wrongfully withheld, they seek the value of all the oil and gas removed over a continuing period. This period cannot be broken into intervals.

In *Sabella v. Appalachian Development Corp.*, the Superior Court of Pennsylvania encountered a similar situation in which one individual removed oil and gas from another's subsurface estate.[60] The defendants there appealed the trial court's ruling on the defendants' statute of limitations defense to the plaintiff's conversion and trespass claims.[61] The appellate court noted "that the applicable two-year statutes of limitation" would either "facially . . . bar all of [the plaintiff's claims]" or "would preclude damages for certain time periods encompassed by the lawsuit."[62]

The *Sabella* court ultimately held that the statute of limitation was tolled for reasons not relevant to this matter.[63] Yet *Sabella* suggests that in cases of a continuing conversion, as is the case here, the statute of limitations will only serve to reduce the damages the plaintiff is entitled to, rather than barring the claims completely. Under that logic, the continuing violation theory would apply in these circumstances where the alleged conversion is of a continuing nature.

---

*Pennsylvania Dept. of Corrections Ct. of Com. Pleas Lancaster County*, No. 85 M.D. 2011, 2015 WL 7737000, at *4 (Pa. Cmmw. Ct. Dec. 1, 2015) (refusing to apply the continuing violation theory to "monthly deductions").

[60] 103 A.3d 83, 88 (Pa. Super. Ct. 2014).
[61] *Id.*
[62] *Id.* at 92 (citing 42 Pa. C.S. § 5524(3)).
[63] *Id.* at 95-96.

In the absence of precise guidance from the Supreme Court of Pennsylvania, the Court concludes that the continuing violation theory applies to Plaintiffs' conversion claims. Therefore, some of the damages Plaintiffs seek may be precluded by the two-year statute of limitations, but that is a matter to be determined as this matter progresses.

Accordingly, SWN's motion to dismiss is denied with respect to its statute of limitations defense.

### 3. Application to Defendant's Claims That It Holds Superior Title

Defendant SWN claims that 2017 Ratification affords it the right to produce oil and gas on the subject lands. It further claims that the 2006 Leases are still valid, defeating Plaintiffs' conversion and quiet title claims. Unlike the Rule 12(b)(7) analysis, however, the Rule 12(b)(6) analysis is confined to the allegations in the complaint and documents referenced therein. The Court concludes that Defendant's claims raise factual issues not fit for resolution on a motion to dismiss.

Whether Defendants have the right to produce oil and gas through the 2006 Leases depends on whether they have satisfied the provisions in those leases allowing extension if certain conditions are satisfied, namely whether Defendants were actively continuing drilling operations "with due diligence" before the lease termination dates.[64]

---

[64] Compl. Doc. 8 ¶ 45.

Whether Defendants have the right to produce oil and gas through the 2017 Ratification depends on whether the Ratifying Cotenants actually own an interest in the subject properties and whether the Ratifying Cotenants intended to lease their interest to Defendants.  Neither of these questions are fit for resolution at this stage as both concern facts beyond the pleadings and documents referenced therein.

Accepting the truth of the allegations in the Complaint, Plaintiffs have satisfactorily supported their claims.

Under Pennsylvania law, a party is liable for conversion if it intentionally deprives "another's right of property in, or use or possession of a chattel, or other interference therewith, without the owner's consent and without lawful justification."[65]  Plaintiffs have alleged that Defendants continue to remove oil that rightfully belongs to Plaintiffs, and that Defendants have no legal justification for doing so because the 2006 Leases have been terminated.

Under Pennsylvania Rule of Civil Procedure 1061(b)(3), an action for quiet title may be brought to "to compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land."  Plaintiffs allege that the 2006 Leases are invalid by virtue of the automatic termination provision and seek Defendants' admission of the same.

---

[65]   *See McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n.3 (Pa. Super. Ct. 2000) (quoting *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964)).

Accordingly, SWN's motion is denied with respect to its claims that it has superior title to that of Plaintiffs.

## III. CONCLUSION

For the foregoing reasons, Defendant SWN's motion to dismiss is denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge